UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>BRETT ANDERSON,<br><br>Defendant. | No. 2:20-cr-00195-TLN<br><br>**ORDER** |

This matter is before the Court for an order of restitution as to Defendant Brett Anderson ("Defendant"). For the following reasons, the Court ORDERS restitution in the amounts set forth herein.

**I.     FACTUAL AND PROCEDURAL BACKGROUND**

On December 17, 2020, Defendant pleaded guilty to a single count information charging transportation of child pornography in violation of 18 U.S.C. § 2552(a)(1). (ECF Nos. 16, 17.) On February 16, 2023, the Court sentenced Defendant to a 77-month term of imprisonment to be followed by a 60-month term of supervised release. (ECF No. 73.) The Court held a restitution hearing on January 11, 2023. (ECF No. 107.)

**II.    STANDARD OF LAW**

18 U.S.C. § 2259 requires district courts to award restitution for certain criminal offenses, including child pornography offenses. Pursuant to the statute, restitution is mandatory for the full

1

amount of the victim's losses that were incurred as a proximate result of the defendant's offense, including losses incurred for: medical services relating to physical, psychiatric, or psychological care; physical and occupational therapy or rehabilitation; necessary transportation, temporary housing, and childcare expenses; lost income, reasonable attorneys' fees and costs; and any other relevant losses incurred by the victim. 18 U.S.C. § 2259.

"A court applying § 2259 should order restitution in an amount that comports with the defendant's relative role in the causal process that underlies the victim's general losses." *Paroline v. United States*, 572 U.S. 434, 458 (2014). In *Paroline*, the Supreme Court declined to prescribe a precise formula for determining the proper restitution amount. *Id.* at 459–60. Instead, the Court recommended a district court start by determining the amount of the victim's losses caused by continuing traffic of the victim's images and then consider factors that bear on the relative causal significance of the defendant's conduct in producing those losses. *Id.* at 460. The Court suggested "rough guideposts" a district court might use to determine the proper restitution amount, such as: the number of past criminal defendants found to have contributed to the victim's general losses; reasonable predictions of the number of future offenders likely to be caught and convicted for crimes contributing to the victim's general losses; any available and reasonably reliable estimate of the broader number of offenders involved (most of whom will never be caught or convicted); whether the defendant reproduced or distributed images of the victim; whether the defendant had any connection to the initial production of the images; how many images of the victim the defendant possessed; and other facts relevant to the defendant's relative causal role. *Id.*

Further, "in calculating the amount of restitution to be imposed upon a defendant who was convicted of distribution or possession of child pornography, the losses, including ongoing losses, caused by the original abuse of the victim should be disaggregated from the losses caused by the ongoing distribution and possession of images of that original abuse, to the extent possible." *United States v. Galan*, 804 F.3d 1287, 1291 (9th Cir. 2015). In *Galan*, the Ninth Circuit indicated the apportionment of a victim's ongoing loss will vary from case to case depending on many factors such as: egregiousness of the original abuse; how a victim can (or does) cope with

that kind of abuse when distribution of images does not follow; and the particular victim's own reactions to the various traumas to which the victim has been subjected. *Id.* The Ninth Circuit noted that "precision is neither expected nor required" and recognized "the ultimate decision will be a mix of discretion and estimation." *Id.* The Government bears the burden of demonstrating the amount of the loss by a preponderance of the evidence. 18 U.S.C. § 3664(e).

### III.   ANALYSIS

The parties stipulate to the following restitution amounts: (1) $6,000 to the victim in the Tara series; (2) $3,000 to the victim in the Patty series; and (3) $2,000 to the victim in the April series. The Court approves the parties' stipulation as to those victims.

Defendant contests the remaining restitution requests. Defendant argues there is insufficient evidence of total loss, disaggregation, and restitution already received such that any restitution award for those victims would be improper and arbitrary. Defendant also argues there is insufficient evidence the images for each victim were pornographic. For its part, the Government submits exhibits from the victims' restitution counsel under seal and provides information about the number of files Defendant possessed from each series.

At the outset, the Court finds there is sufficient evidence that the files Defendant possessed from each series constituted child pornography. Defendant admitted in the factual basis of his plea agreement to possessing over 7,000 images and approximately 925 videos of child pornography. (ECF No. 16. at 14.) At sentencing, Defendant was held accountable for approximately 925 video files and 15,902 image files of suspected child pornography. (ECF No. 55 at 5.) Of these images, there were 215 known child pornography series identified by National Center for Missing and Exploited Children ("NCMEC"). (*Id.*) The Government cited the NCMEC to report the number of files Defendant possessed of each victim. The Court also notes the restitution requests include descriptions of the abuse depicted in each respective series.

Turning to Defendant's concerns regarding improper and arbitrary arbitration awards for the victims, both the Supreme Court and Ninth Circuit have acknowledged the difficulty district courts face in arriving at the proper restitution amount in child pornography possession and distribution cases. *See Paroline*, 572 U.S. at 462 (determining restitution in these cases "is not

without its difficulties" and "courts can only do their best"); *Galan*, 804 F.3d at 1291 (noting this area of law "cries out for a congressional solution"). Defendant's arguments echo the concerns Justice Roberts raised in his dissent in *Paroline*, in which Justices Scalia and Thomas joined. 572 U.S. at 468 (Roberts, J., dissenting) (stating that under the majority's approach, "it is not possible to do anything more than pick an arbitrary number" for loss amount in these types of child pornography cases, "[a]nd arbitrary is not good enough for criminal law"). While Defendant's concern is understandable, the Court is bound by the majority's approach set forth in *Paroline* and will strive to "do [its] best" to determine the proper restitution amounts for each victim in the instant case. *Paroline*, 572 U.S. at 462. The Court will address each of the remaining restitution requests in turn.

> A. <u>Marineland1</u>

In its memorandum, the Government recommends the Court order restitution to Sarah, the victim in the Marineland1 series, in the amount of $5,000 based on the 334 files from this series found on Defendant's devices. The Court agrees with the Government that $5,000 is an appropriate restitution amount for Sarah.

In a sealed filing, restitution counsel states the full amount of Sarah's losses to date are $2,758,335.28, which includes costs of psychological counseling, lost income, and attorneys' fees. Restitution counsel also indicates Sarah has not yet received payment for all her losses, and there have been 757 restitution orders for Sarah to date. Restitution counsel submits various exhibits to support the victim's request, such as a victim impact statement, a forensic psychological evaluation, a vocational assessment, and an economic report. Lastly, restitution counsel attempts to disaggregate the harm caused by Defendant from the original abuse. For example, restitution counsel argues the evidence suggests Sarah was functioning relatively well until she learned of the circulation of her images on the internet.

The Court concludes this evidence is sufficient to show by a preponderance of the evidence that Sarah suffers ongoing loss because of the dissemination of her images and that $5,000 appropriately represents the harm Defendant's conduct caused Sarah based on the foregoing evidence and the substantial number of images he possessed from this series.

B.    Sweet White Sugar

In its memorandum, the Government recommends the Court order restitution to Pia, the victim in the Sweet White Sugar series, in the amount of $5,000 based on the 203 files from this series found on Defendant's devices. The Court agrees with the Government that $5,000 is an appropriate restitution amount for Pia.

In a sealed filing, restitution counsel states Pia's losses include costs of ongoing psychological treatment, lost income, out-of-pocket costs for documenting her losses, and attorneys' fees. The projected loss for Pia ranges from $286,000 and $323,000 for mental health intervention alone. Restitution counsel submits various exhibits to support the request, such as a victim impact statement and a forensic psychological evaluation. Lastly, restitution counsel attempts to disaggregate the harm caused by Defendant from the original abuse. For example, restitution counsel argues the evidence suggests Pia only became aware of the distribution of the images of her abuse within the last few years, and the realization has caused her harm in addition to the original abuse.

The Court concludes this evidence is sufficient to show by a preponderance of the evidence that Pia suffers ongoing loss because of the dissemination of her images and that $5,000 appropriately represents the harm Defendant's conduct caused Pia based on the foregoing evidence and the substantial number of images he possessed from this series.

C.    Pink Heart Sisters

The Government recommends the Court order restitution to Erika and Tori, the victims in the Pink Heart series, in the amount of $3,000 each based on the 59 files related to Erika and 28 files related to Tori from this series found on Defendant's devices. The Court agrees with the Government that $3,000 each is an appropriate restitution amount for Erika and Tori.

In a sealed filing, restitution counsel states the full amount of losses are unknown because Erika and Tori have not yet received enough restitution to afford forensic psychological examinations and economic reports, which would cost approximately $20,500 per victim. Restitution counsel indicates these reports would help disaggregate the harm in more detail. Restitution counsel submits various exhibits to support the request, such as victim impact

5

statements and psychological consultations, which indicate Erika and Tori suffer continued trauma from knowing their images are shared online.

The Court concludes this evidence is sufficient to show by a preponderance of the evidence that Erika and Tori suffer ongoing loss because of the dissemination of their images and that $3,000 appropriately represents the harm Defendant's conduct caused each victim based on the foregoing evidence and substantial number of images he possessed from this series.

### D. BluePillow1

In its memorandum, the Government recommends the Court order restitution to Henley, the victim in the BluePillow1 series, in the amount of $3,000 based on the 26 files from this series found on Defendant's devices. The Court agrees with the Government that $3,000 is an appropriate restitution amount for Henley.

In a sealed filing, restitution counsel states Henley's losses include costs of ongoing psychological treatment, lost income, and attorneys' fees. The projected loss for Henley ranges from $75,500 to $116,500 for mental health intervention alone. Restitution counsel submits various exhibits to support the request, such as a victim impact statement and a forensic psychological evaluation. Lastly, restitution counsel attempts to disaggregate the harm caused by Defendant from the original abuse. For example, restitution counsel indicates Henley has been followed, harassed, and stalked, and her growth and development, security, and stability have been interrupted by the distribution and circulation of her images.

The Court concludes this evidence is sufficient to show by a preponderance of the evidence that Henley suffers ongoing loss because of the dissemination of her images and that $3,000 appropriately represents the harm Defendant's conduct caused Henley based on the foregoing evidence and substantial number of images he possessed from this series.

### E. Middle Model Sister

The Government recommends the Court order restitution to Anna, the victim in the Middle Model Sister series, in the amount of $3,000 based on the 14 files from this series found on Defendant's devices. The Court agrees with the Government that $3,000 is an appropriate restitution amount for Anna.

In a sealed filing, restitution counsel states the full amount of Anna's losses to date are unknown because she has not yet received enough restitution to afford forensic psychological examinations and economic reports, which would cost over $20,000. Restitution counsel submits a victim impact statement from Anna to support her request. Lastly, restitution counsel attempts to disaggregate the harm caused by Defendant from the original abuse. For example, restitution counsel argues Anna's suffering is exacerbated by knowing that her images are circulated online.

The Court concludes this evidence is sufficient to show by a preponderance of the evidence that Anna suffers ongoing loss because of the dissemination of her images and that $3,000 appropriately represents the harm Defendant's conduct caused to Anna based on the foregoing evidence and substantial number of images he possessed from this series.

### F. Sweet Purple Sugar

The Government does not make a specific recommendation as to Ava, the victim in the Sweet Purple Sugar series, but states that Defendant had 10 files from the Sweet Purple Sugar series on his devices.

In a sealed filing, restitution counsel states Ava's losses include costs of ongoing psychological treatment, lost income, and attorneys' fees. The projected loss for Ava ranges from $62,000 to $120,000 for mental health intervention alone. Restitution counsel submits various exhibits to support the request, such as a victim impact statement and a forensic psychological evaluation. Lastly, restitution counsel sufficiently disaggregates the harm caused by Defendant from the original abuse.

The Court concludes this evidence is sufficient to show by a preponderance of the evidence that Ava suffers ongoing loss because of the dissemination of her images and that $1,000 appropriately represents the harm Defendant's conduct caused Ava based on the foregoing evidence and the limited number of images he possessed from this series.

### G. Lighthouse1

The Government does not make a specific recommendation as to Maureen, the victim in the Lighthouse1 series, but states that Defendant had 9 files from the Lighthouse1 series on his devices.

In a sealed filing, restitution counsel states Maureen's losses include costs of ongoing psychological treatment, lost income, and attorneys' fees. The projected loss for Maureen ranges from $170,200 to 189,800 for mental health intervention alone. Restitution counsel submits various exhibits to support the request, such as a victim impact statement and a forensic psychological evaluation. Lastly, restitution counsel sufficiently disaggregates the harm caused by Defendant from the original abuse.

The Court concludes this evidence is sufficient to show by a preponderance of the evidence that Maureen suffers ongoing loss because of the dissemination of her images and that $1,000 appropriately represents the harm Defendant's conduct caused Maureen based on the foregoing evidence and the limited number of images he possessed from this series.

        H.     Cindy

The Government does not make a specific recommendation as to Cindy, but states that Defendant had 6 files from the Cindy series on his devices.

In a sealed filing, restitution counsel states Cindy's current documented economic losses total $1,668,232.47, which includes future lost earnings, various evaluations, and attorneys' fees. Restitution counsel submits various exhibits to support the request, such as a victim impact statement, vocational assessment, forensic psychological evaluation, and economic loss report. Lastly, restitution counsel sufficiently disaggregates the harm caused by Defendant from the original abuse.

The Court concludes this evidence is sufficient to show by a preponderance of the evidence that Cindy suffers ongoing loss because of the dissemination of her images and that $1,000 appropriately represents the harm Defendant's conduct caused Cindy based on the foregoing evidence and the limited number of images he possessed from this series.

        I.     Misty

The Government does not make a specific recommendation as to Amy, the victim in the Misty series, but states that Defendant had 4 files from the Misty series on his devices.

In a sealed filing, restitution counsel states Amy's current documented economic losses total over $8 million, which includes future lost earnings, costs of future treatment, and reduction

in value of life.  Restitution counsel submits various exhibits to support the request, such as a victim impact statement, psychological evaluation, and an economic loss report.  Lastly, restitution counsel sufficiently disaggregates the harm caused by Defendant from the original abuse.

The Court concludes this evidence is sufficient to show by a preponderance of the evidence that Amy suffers ongoing loss because of the dissemination of her images and that $1,000 appropriately represents the harm Defendant's conduct caused Amy based on the foregoing evidence and limited number of images he possessed from this series.

J.      Jessica

The Government does not make a specific recommendation as to Jessica, but states that Defendant had 4 files from the Jessica series on his devices.

In a sealed filing, restitution counsel states Jessica's current documented economic losses total over $3 million, which includes future lost earnings, costs of future treatment, and reduction in value of life.  Restitution counsel submits various exhibits to support the request, such as a victim impact statement, psychological evaluation, and an economic loss report.  Lastly, restitution counsel sufficiently disaggregates the harm caused by Defendant from the original abuse.

The Court concludes this evidence is sufficient to show by a preponderance of the evidence that Jessica suffers ongoing loss because of the dissemination of her images and that $1,000 appropriately represents the harm Defendant's conduct caused Jessica based on the foregoing evidence and limited number of images he possessed from this series.

K.      Jenny

The Government does not make a specific recommendation as to Jenny, but states that Defendant had 3 images and 1 video file from the Jenny series on his devices.

In a sealed filing, restitution counsel states Jenny's current documented economic losses total over $3 million, which includes future lost earnings, costs of future treatment, and reduction in value of life.  Restitution counsel submits various exhibits to support the request, such as a victim impact statement, psychological evaluation, and an economic loss report.  Lastly,

9

restitution counsel sufficiently disaggregates the harm caused by Defendant from the original abuse.

The Court concludes this evidence is sufficient to show by a preponderance of the evidence that Jenny suffers ongoing loss because of the dissemination of her images and that $1,000 appropriately represents the harm Defendant's conduct caused Jenny based on the foregoing evidence and limited number of images he possessed from this series.

### L. At School

The Government does not make a specific recommendation as to Violet, the victim in the At School series, but states that Defendant had 2 files from the At School series on his devices.

In a sealed filing, restitution counsel states Violet's current documented economic losses total approximately $803,968.14, which includes costs of future treatment and medical care. Restitution counsel submits various exhibits to support the request, such as a victim impact statement and forensic psychological evaluation. Lastly, restitution counsel sufficiently disaggregates the harm caused by Defendant from the original abuse.

The Court concludes this evidence is sufficient to show by a preponderance of the evidence that Violet suffers ongoing loss because of the dissemination of her images and that $1,000 appropriately represents the harm Defendant's conduct caused Violet based on the foregoing evidence and limited number of images he possessed from this series.

### M. Jan_Socks1

The Government does not make a specific recommendation as to Sierra, but states that Defendant had 2 files from the Jan_Socks1 series on his devices.

In a sealed filing, restitution counsel states Sierra's projected losses total over $1 million, which includes future psychological treatment. Restitution counsel submits various exhibits to support the request, such as a victim impact statement and a forensic psychological evaluation. Lastly, restitution counsel sufficiently disaggregates the harm caused by Defendant from the original abuse.

The Court concludes this evidence is sufficient to show by a preponderance of the evidence that Sierra suffers ongoing loss because of the dissemination of her images and that

1 | $1,000 appropriately represents the harm Defendant's conduct caused Sierra based on the
2 | foregoing evidence and limited number of images he possessed from this series.

### N. 8Kids

The Government does not make a specific recommendation as to the victim in the 8Kids series, but states that Defendant had 2 files from the 8Kids series on his devices. The Government notes that it has been unable to verify which victim is depicted in the files. Because the Government has been unable to identify the victim depicted in the files Defendant possessed from the 8Kids series, the Court declines to award restitution to the victim in the 8Kids series.

### O. TightsnGold

In its memorandum, the Government does not make a specific recommendation as to Emily, the victim in the TightsnGold series, but states that Defendant had 1 file from the TightsnGold series on his devices.

In a sealed filing, restitution counsel states Emily's losses amount to over $500,000 in mental health treatment alone. Restitution counsel submits a forensic psychological evaluation and mental health care plan to support the request. Lastly, restitution counsel sufficiently disaggregates the harm caused by Defendant from the original abuse.

The Court concludes this evidence is sufficient to show by a preponderance of the evidence that Emily suffers ongoing loss because of the dissemination of her images and that $1,000 appropriately represents the harm Defendant's conduct caused Emily based on foregoing evidence and the limited number of images he possessed from this series.

///
///
///
///
///
///
///
///

**IV.  CONCLUSION**

For the foregoing reasons, the Court ORDERS Defendant to pay restitution in a total amount of $42,000, to be distributed as follows:

1. $6,000 to Tara, the victim in the Tara series;
2. $3,000 to Patty, the victim in the Patty series;
3. $2,000 to April, the victim in the April series;
4. $5,000 to Sarah, the victim in the Marineland1 series;
5. $5,000 to Pia, the victim in the Sweet White Sugar series;
6. $3,000 to Erika and $3,000 to Tori, the victims in the Pink Heart Sister series;
7. $3,000 to Henley, the victim in the BluePillow1 series;
8. $3,000 to Anna, the victim in the Middle Model Sister series;
9. $1,000 to Ava, the victim in the Sweet Purple Sugar series;
10. $1,000 to Maureen, the victim in the Lighthouse1 series;
11. $1,000 to Cindy, the victim in the Cindy series;
12. $1,000 to Amy, the victim in the Misty series;
13. $1,000 to Jessica, the victim in the Jessica series;
14. $1,000 to Jenny, the victim in the Jenny series;
15. $1,000 to Violet, the victim in the At School series;
16. $1,000 to Sierra, the victim in the Jan_Socks1 series; and
17. $1,000 to Emily, the victim in the TightsnGold series.

IT IS SO ORDERED.

Date:  January 19, 2024

_____
Troy L. Nunley
United States District Judge